**HERCULES POWDER CO. v. NEWTON, Commissioner of Patents.**

(Circuit Court of Appeals. Second Circuit. April 14, 1920.)

No. 108.

1. **Trade-marks and trade-names** ☞3(4)—**"Infallible" is descriptive, and not registrable as trade-mark for smokeless powder.**
    Under Trade-Marks Act, § 5, as amended (Comp. St. § 9490), providing that "no mark which consists * * * merely in words * * * which are descriptive of the goods with which they are used, or of the character or quality of such goods, * * * shall be registered," the word "Infallible" *held* not registrable as a trade-mark for a smokeless powder.

2. **Trade-marks and trade-names** ☞3(1)—**To be registrable, if descriptive, must be something others may not employ with equal truth.**
    The fundamental inquiry in determining the registrability of a trade-mark is whether the suggested trade-mark, word, or device, with the environment proposed for it, conveys by its primary meaning something which others may employ with equal truth and equal right for the same purpose.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Trade-marks and trade-names ⊙⇒3 (4)—"Merely descriptive" defined.**

The words "merely descriptive," as used in Trade-Mark Act, § 5, as amended (Comp. St. § 9490), providing that no mark consisting of words merely descriptive of the goods with which they are used shall be registered, mean only descriptive, or nothing more than descriptive.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Hercules Powder Company against James T. Newton, as Commissioner of Patents. Decree for defendant, and complainant appeals. Affirmed.

For opinion below, see 254 Fed. 906.

The bill is brought under section 4915, R. S. (Comp. St. § 9460), and section 9 of the Trade-Mark Act of 1905 (33 Stat. 727 [Comp. St. § 9494]), to procure a declaration that plaintiff is entitled to have defendant register under the act its trade-mark of "Infallible" for smokeless sporting powder. Diversity of citizenship exists between the parties; therefore, although neither is resident within the Southern district of New York, jurisdiction exists, based solely on the consent of defendant. Barrett Co. v. Ewing, 242 Fed. 506, 155 C. C. A. 282.

In 1914 plaintiff applied for registration, showing a use of the word "Infallible" as applied to smokeless sporting powder for several years. On appeal from the Examiner, defendant said that "under the circumstances" shown he held the word "descriptive" with "great reluctance." He pointed out that plaintiff's use of the word as a mark could be protected on the principles of unfair competition, but, since the Patent Office had theretofore denied registration to "Infallible" as applied to flour, the same reasons impelled to deny as to smokeless powder; for plaintiff claimed by advertisement that its powder was "uniform in velocity and pattern," not "affected by climatic changes," and "always reliable." Of such a substance he thought "Infallible" not "exhaustively" descriptive; but still it described the qualities such powder should possess, and it therefore should not be registered.

From this decision an appeal was taken to the Court of Appeals of the District of Columbia, which affirmed. In re Hercules Powder Co., 46 App. D. C. 52. This suit was then brought, and the bill dismissed; this appeal followed.

Edwin J. Prindle and Warren H. Small, both of New York City, for appellant.

L. D. Underwood and Robert F. Whitehead, both of Washington, D. C., and Francis G. Caffey, of New York City, for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The issue tendered by the pleadings herein is shown by an extract from the answer, viz.:

"Defendant denies that the word 'Infallible' is registrable as a trade-mark for smokeless powder under the act, * * * and avers that it is * * * precluded from registration by said act."

Thus the point is, not that registration ought not to be granted because of some proven fact, but that it cannot lawfully be conferred because the statute forbids.

Plaintiff has, we think, somewhat complicated the issue by pressing upon us as a fact proven beyond doubt that dealers and buyers of powder do not associate "Infallible" with that explosive, except as in-

dicative of its origin—"Infallible" means made by Hercules Company. If this be true, it doubtless strengthens plaintiff's rights against infringers or trespassers; it shows the existence of a business to which the mark is appurtenant, and tends to prove rights which should be protected from unfair—i. e., deceptive—competition.

But the only question we have, or can have, presently before us, is the right to register; not the value or worthlessness of what is registered. The desirability of registration under the act of 1905, to and among those in extensive and especially foreign trade, is very great, and need not be dwelt upon; yet it is too well settled to need citation that a trade-mark is not the creature of registration, but the appendage or growth of a business. The Commissioner cannot base approval or denial of application on an inquiry into the nature of petitioner's business, or a finding as to how the public regards the product thereof; he can but examine the article and the mark, and declare whether the statute prohibits their registered union.

Therefore the evidence offered by plaintiff is immaterial, and we regard the case as presenting nothing but an inquiry as to the meaning of a statute. The absence of contradictions of fact, or of contradictory inferences of fact from admitted phenomena, differentiates this case from Gold v. Newton, 254 Fed. 824, 166 C. C. A. 270, and we proceed to consider the legal question above stated.

Our present trade-mark statute (Act 1905, 33 Stat. 724 [Comp. St. § 9485 et seq.]) as amended, does not describe or define what constitutes either a good trade-mark or a registrable trade-mark. It assumes that the word has a meaning sufficiently well known to dispense with statutory definition. It does, however, lay down some rules for the guidance of the Commissioner, and this case revolves around the construction of one of those rules, viz. (Act, § 5, Comp. Stat. § 9490):

"No mark which consists * * * merely in words * * * which are descriptive of the goods with which they are used, or of the character or quality of such goods, or merely a geographical name or term, shall be registered."

It has been said of these words that they only declare "the accepted law of trade-marks," and we agree with this ruling. In re National Phonograph Co., 29 App. D. C. 142.

On one point only did the present statute in effect certainly recognize, if not create, a property right previously doubtful, if not, wholly nonexistent. We refer to the so-called "10-year clause," also found in section 5 of the act, which as construed in Davids Co. v. Davids Mfg. Co., 233 U. S. 461, 34 Sup. Ct. 648, 58 L. Ed. 1046, and Nashville, etc., Co. v. Coca Co., 215 Fed. 527, 132 C. C. A. 39, Ann. Cas. 1915B, 358, secured, if it did not give, to those who had exclusively used a doubtful mark for 10 years before the passage of the trade-mark statute, rights now undoubted.

But nothing can be found in the act which gives to one who has succeeded in exclusively using a merely descriptive or geographical or proper name for 10 years expiring after the passage of the act rights identical with or similar to those validated by the 10-year clause. It seems to us the clear intent of the Legislature to compel those who

wish registration for their marks, and who could not claim under the 10-year proviso, to suggest to the Commissioner for registration only those marks recognized by the "accepted law"; i. e., in the absence of further legislation by the rule announced in authoritative judicial decisions.

It is not without interest to note that, cotemporaneously with the passage of our present statute, Great Britain revised its law by passing the Trade-Mark Act of 1905 (for text see Sebastian, Trade-Marks [5th Ed.] p. 368). That act provides (section 9, subsec. 4) that a mark may be registered which is "a word or words having no direct reference to the character or quality of the goods" to be distinguished. Under this section of the act has grown up the English rule that words which are merely "laudatory epithets" are not registrable as trade-marks. See In re Crosfield [1910] L. R. 1 Ch. 130), disallowing the word "Perfection" as applied to soap; and In re Sharpe, etc., 84 L. J. Ch. 290, rejecting the word "Classic" as applied to stationery.

Though often difficult in application, the accepted legal rule for trade-marks suspected of being descriptive or geographic is not difficult to state; and it may be noted that both in the statute and in decisions the faults arising from geographic and descriptive names are treated alike—they are nearly akin. For us the authoritative rule was restated in Standard, etc., Co. v. Trinidad, etc., Co., 220 U. S. at page 453, 31 Sup. Ct. at page 457 (55 L. Ed. 536), thus:

"It [the trademark] may consist in any symbol, or in any form of words; but, as its office is to point out distinctively the origin or ownership of the articles to which it is affixed, it follows that no sign or form of words can be appropriated as a valid trade-mark which, from the nature of the fact conveyed by its primary meaning, others may employ with equal truth, and with equal right, for the same purpose."

The latest ruling (Hamilton, etc., Co. v. Wolf, 240 U. S. 256, 36 Sup. Ct. 269, 60 L. Ed. 629) relies upon the same decisions and applies the same rule to a close case, and, in holding "American Girl" as not descriptive of shoes, points out that "American Shoes" would come within the prohibition.[1] It seems clear, therefore, that the Commissioner will properly act under this section of the statute if he inquires whether under ruling case law the proposed trade-mark is descriptive, unless it can be held that the statute has modified or changed the result of judicial decision by inserting the word "merely."

[3] "Merely descriptive" means only descriptive, or nothing more than descriptive. It may be that the force of the adverb is satisfied by the addition to the descriptive word of a picture or device, or by qualifying the description through the addition of another word. Thus in Re Crosfield, supra (page 143), it was suggested that, while appellant could not use the word "Perfection" as a trade-mark for soap, if he used "Crosfield's Perfection, different considerations might arise."

---

[1] Dennison, etc., Co. v. Thomas, etc., Co. (C. C.) 94 Fed. 651, and Kellogg, etc., Co. v. Quaker Oats Co., 235 Fed. 657, 149 C. C. A. 77, contain citations of practically all the best-considered cases on this subject.

But if the proposed trade-mark consists of a single word, then that word standing alone is merely descriptive, or it is not descriptive at all. It does not conflict with this ruling that, as suggested in Williams v. Mitchell, 106 Fed. 170, 45 C. C. A. 265, a word may be in its nature descriptive, and yet in its application not descriptive.[2]

As most English speech is to be understood only from its context, so a word often takes its hue and meaning from its environment. It is to this truth that we owe such decisions as that in Waterman v. Shipman, 130 N. Y. 310, 29 N. E. 114, holding that the word "Ideal," as applied to "fountain pens, is nondescriptive, arbitrary, and fanciful, and has no natural nor necessary application to a pen." And this court made the same ruling in respect of the same word as applied to brushes, in Hughes v. Smith, 209 Fed. 39, 126 C. C. A. 179, although the remark was not necessary to decision, inasmuch as the "10-year clause" protected that particular trade-mark.

[2] But, after making these allowances, it remains true that the fundamental inquiry is this: Does the suggested trade-mark word or device, with the environment proposed for it, convey by its primary meaning something which others may employ with equal truth and equal right for the same purpose?

Putting that inquiry in this case, it seems to us that the word "infallible," as applied to explosive powder, is merely descriptive. The word by derivation, and perhaps when accurately used, refers always to mental processes; but it has long come to mean in common acceptation "exempt from uncertainty" or "absolutely trustworthy." When applied to an explosive, it is plainly descriptive of what the powder will do, and is distinctly the "laudatory epithet" of the English cases. Comparing it with the American formulation of the rule, it is obvious that any other manufacturer of equally good powder may, with equal right and equal truth, call his explosive "Infallible."

Decisions on such a point as this are illustrations rather than ruling precedents, for the environment or application of the word may so easily modify its signification. Yet, since the word is a common one, rulings upon a word similarly suggestive of excellence and similarly common are illuminative. The word "Standard," as applied to phonographs, has been rejected (Re National Phonograph Co., 29 App. D. C. 142), and has been found equally open to objection in respect of scales (Computing Scale Co. v. Standard, etc., Co., 118 Fed. 965, 55 C. C. A. 459); while as applied to bath tubs and similar articles it has been rejected (Standard Ideal Co. v. Standard Sanitary Co., [1911] L. R. App. Cas. 78), under the Canadian Trade-Mark Act, which requires refusal of registration "if the so-called trade-mark does not contain the essentials necessary to constitute a trade-mark properly speaking." Under this language it seemed to the Privy Council "perfectly clear that a common English word, having reference to the character and quality of the goods in connection with which it is used, and having no reference to anything else, cannot be an apt or appropriate instru-

[2] This ruling was disapproved (as it seems to us improperly) in Re American, etc., Co., 28 App. D. C. 446.

ment for distinguishing the goods of one trader from those of another."

The decisions of this court have adhered to this rule consistently, from Bennett v. McKinley, 65 Fed. 505, 13 C. C. A. 25 (instantaneous tapioca case) to Thermogene Co. v. Thermozine Co., 234 Fed. 69, 148 C. C. A. 85 (the thermos bottle case). The litigation over "Holeproof" hosiery (Holeproof Co. v. Wallach, 172 Fed. 859, 97 C. C. A. 263, modifying [C. C.] 167 Fed. 373) was decided wholly on grounds of unfair competition, as also were Siegert v. Candolfi, 149 Fed. 100, 79 C. C. A. 142 (the Angostura bitters case), Florence, etc., Co. v. Dowd, 178 Fed. 73, 101 C. C. A. 565 (the Keepclean tooth brush case), and Wrigley, etc., Co. v. Grove Co., 183 Fed. 99, 105 C. C. A. 391 (the Spearmint gum case).

It is true that in some of the decisions hereinabove cited, and many others, the distinction between rights inhering in a valid and registrable trade-mark and those arising from a defendant's unfair competition have not been plainly delimited. Yet the distinction is not shadowy; and in the closely akin matter of geographical names as trade-marks we have recently treated it at length in Scandinavia Co. v. Asbestos, etc., Works, 257 Fed. 951, 960, 169 C. C. A. 87.

We there held that geographical names did not constitute valid trade-marks, unless selected, used, and appropriated under such special circumstances as to point distinctively to origin or ownership. Of this the Chartreuse litigation is the best instance. Baglin v. Cusenier Co., 221 U. S. 592, 31 Sup. Ct. 669, 55 L. Ed. 863. Transferring that remark to the present case of a descriptive word as a trade-mark, we think that such word must be rejected, unless it is so modified by other words, phrases, or designs as to render it not "merely" descriptive, or unless common knowledge or evidence demonstrates that the descriptive word is used in a plainly nondescriptive manner. Of this last the Sterling ale case (Worcester, etc., Co. v. Reter, 157 Fed. 217, 84 C. C. A. 665), and Ludington, etc., Co. v. Leonard, 127 Fed. 155, 62 C. C. A. 269, are examples. In this last case the word "Carroms" was upheld as a trade-mark for a game, because a carrom was no part of the game.

The similarity of trade-mark and unfair competition law is obvious; the latter largely grew out of the former, and is its natural evolution. The differences between them are perhaps as well marked by extreme cases under both doctrines as in any other way. The rigid, yet far-reaching, nature of a trade-mark is well illustrated by Aunt Jemima, etc., Co. v. Rigney, 247 Fed. 407, 159 C. C. A. 461, L. R. A. 1918C, 1039, while the possibilities of relief against unfair competition find an extreme example in Shredded Wheat Co. v. Humphrey Cornell Co., 250 Fed. 960, 163 C. C. A. 210. The litigation in this circuit over this trade-mark has, we think, grown out of the very rigid language employed by the Court of Appeals of the District of Columbia in cases of this kind. The decision on the appeal of the present plaintiff is based upon adherence to the court's previous decision in Re Central Consumers' League, 32 App. D. C. 523, where the court held that it was

the object of Congress "to prohibit any one from acquiring a property right * * *. in a name possessing any inherent signification that would of itself enhance the use or value of the article or articles to which it may be applied. * * * It was intended to limit the selection to mere arbitrary words." In adhering to its previous ruling the court further said of trade-mark words in general: "If descriptive at all, the act forbids the registration."

As above indicated, we think that is going too far. The suggested word must be "merely" descriptive, and must be so descriptive with reference to the particular thing to be described. The difference between suggestion and description is often hard to perceive. Complete definition seems to us impossible, but apt illustration is furnished by the present cause. An explosive powder marked as "Hercules" would be suggestive, and no person other than its maker could with equal right and equal truth call his powder by that name or any derivative therefrom; but "Infallible" is merely descriptive, because it has no association with the Hercules Company, other than that acquired by a long course of business nomenclature.

Another reason for this present action is the long line of trademarks allowed by the Patent Office and thought by the plaintiff to be open to the same objection successfully urged against his word "Infallible." It seems to us that the registration of such words as "Perfection" and "Marvelous" for cold cream (not to speak of others) is open to criticsm, but errors in the Office cannot affect authoritative judicial decisions. It is also reasonably inferable from this record that plaintiff feels unjustly treated by refusal to register a word which it has exclusively and successfully used as a trade-mark for more than 10 years, but not for that decade which alone secures protection under the 10-year clause of the present statute. We appreciate the hardship, and are quite aware of the international trade-mark difficulties which beset the path of the American trader in foreign parts, who has not secured registration in his own country. But the remedy is with the Congress, and neither the Commissioner of Patents nor any court can change the accepted law on which the Trade-Mark Act of 1905 was built.

It is not possible under the present act for a citizen to choose as his trade-mark something invalid by general law, use it without opposition long enough to make a showing of trade repute and commercial success, derive from that success "secondary meaning" for his mark, and then apply for registration. There is much to be said in favor of a registration law which would give legal and governmental sanction to any mark which it could be shown the public had accepted. Such a system would enable this plaintiff to prevail; but Congress must first create it.

Decree affirmed.