## ANHEUSER–BUSCH, Inc., v. BUDWEISER MALT PRODUCTS CORPORATION.

### (District Court, S. D. New York. September 27, 1921.)

1. **Trade-marks and trade-names and unfair competition ⊜═9—"Budweiser," though geographical in origin, protected as trade-mark.**

   "Budweiser," forming part of complainant's trade-mark for beer and malt liquors, though geographical in origin, is nevertheless entitled to protection where used to lawfully designate complainant's product until it became known to the trade by that designation, against injury by acts of defendants which create dishonest competition.

2. **Trade-marks and trade-names and unfair competition, ⊜═93(3)—Use by others insufficient to show abandonment of trade-mark.**

   Under the rule that to establish abandonment of a trade-mark it is necessary to show not only acts indicating a practical abandonment, but an actual intent to abandon, evidence of the use by others of the term "Budweiser" *held* insufficient to show abandonment by complainant of the name "Budweiser" as part of its trade-mark for beer and malt liquors.

3. **Trade-marks and trade-names and unfair competition ⊜═86—Complainant making prompt objection to infringement of trade-name not guilty of laches nor estopped from claiming protection.**

   Where complainant filed its application for the registration of Budweiser as a trade-mark for malt syrup in the month following that in which defendant began to market its "Budweiser Malt Syrup," and a month later made specific objection to defendant's use of the name "Bud-

weiser," complainant was not barred by estoppel or laches to seek protection for such name long used by it as part of its trade-mark for beer and malt liquors.

**4. Trade-marks and trade-names and unfair competition ☞68—"Budweiser" as name for malt syrup suggesting by-product of complainant's manufacture unfair, and proof of inferiority not necessary.**

Where complainant by long use and extensive advertising had created a market for its products under the trade-name "Budweiser" to characterize its beer and malt liquors, a manufacturer of malt syrup cannot justify the use of the name "Budweiser Malt Syrup" on the ground that beer is not a malt product, since the name itself suggests that the product is a by-product of complainant's manufacture, and it is not necessary for complainant to prove defendant's product actually inferior to protect itself from misuse of its name and good will.

**5. Trade-marks and trade-names and unfair competition ☞68—Deception is gist of unfair competition.**

The fundamental question in cases of unfair competition is whether the public is being misled and deceived, so that a defendant is in effect taking advantage of the good will and business reputation that a complainant has built up through lawful and proper means.

In Equity. Suit by Anheuser-Busch, Inc., against the Budweiser Malt Products Corporation. Complainant's motion for preliminary injunction to prevent the use of complainant's trade-name granted.

Archibald Cox, of New York City (Daniel N. Kirby, of St. Louis, Mo., of counsel), for complainant.

Gilbert & Gilbert, of New York City, for defendant.

MACK, Circuit Judge. This is a motion for a preliminary injunction to prevent the use, in defendant's corporate name and upon its malt products, of the name "Budweiser," in which it is alleged complainant's reputation and good will are embodied. The verified complaint alleges that since the year 1875 the complainant and its predecessor, Conrad, have produced a beer under the name of "Budweiser," and that it has spent $10,000,000 in advertising that name and making it known to the public; that the malt syrup being marketed as Budweiser by the defendant doing business under the name of the Budweiser Malt Products Corporation is closely related to beer by reason of the fact that the same materials, processes, apparatus, and skill may be used in its production as were formerly used in the production of beer; and that the public has been and will be misled and deceived and caused to purchase the product of the defendant, believing it to be a product for which the complainant is responsible.

The term "Budweiser" forms a part of the trade-mark for beer, lager beer, and malt liquors, registered by the complainant in 1907. On August 12, 1920, the complainant filed an application for the registration of the term as a trade-mark for malt syrup, claiming use since August 6, 1920. The application was opposed by the defendant, which claimed prior use of a month or more. The case is now pending in the Patent Office.

The defendant here contends that the term "Budweiser" is geographic and descriptive and is not the subject of a trade-mark or trade-

name for any product.  The president of the defendant asserts that he selected the name "Budweiser" for his malt syrup because it indicated to him the same appearance and quality of malt syrup as his father had procured for him from Budweis, Bohemia, some 15 years before.  The beer made in Budweis was, he points out, noted for its excellence, and when it was imported into the United States various concerns commenced the manufacture of beer which resembled, to some extent, the genuine Budweiser beer, as the result of which there were sold throughout this country at various times "Imported Budweiser," "Conrad's Budweiser," "Anheuser-Busch's Budweiser," "Brooklyn Budweiser," and "Du Bois Budweiser."

[1] Conrad was the complainant's predecessor.  The use of the term "Imported Budweiser" to denote the actual place of origin is somewhat different from other instances referred to, all of which, with the possible exception of "Chicago Budweiser," registered in 1893 and the use of which apparently has long been discontinued, were questioned at some time or other by the complainant.  Whether the complainant by its inactivity or laches has lost any rights as against any of the parties there involved need not be here determined.  Apart from "Du Bois Budweiser," the sale of which seems to be localized about Du Bois, Pa. (cf. Hanover Milling Co. v. Metcalf, 240 U. S. 403, 36 Sup. Ct. 357, 60 L. Ed. 713), there is no evidence of the general use of the term "Budweiser" by any company in the United States other than by the complainant.  "True the name is geographical; but geographical names often acquire a secondary signification indicative not only of the place of the manufacture or production, but of the name of the manufacturer or producer and the excellence of the thing manufactured or produced, which enables the owner to assert an exclusive right to such name as against everyone not doing business within the same geographical limits; and even as against them, if the name be used fraudulently for the purpose of misleading buyers as to the actual origin of the thing produced, or of palming off the productions of one person as those of another."  French Republic v. Saratoga Vichy Co., 191 U. S. 427, 24 Sup. Ct. 145, 48 L. Ed. 247.  Undoubtedly the complainant may not have acquired "such a monopoly in a geographical name as a trademark or trade-name as would entitle them to prevent others from using it under any circumstances.  But it is sufficient to entitle them to relief that they used the name lawfully to designate their product until it became known to the trade by that designation, that by doing so they acquired a trade which was valuable to them, and that their business is being injured by acts of the defendants which create a dishonest competition."  Siegert v. Gandolfi, 149 Fed. 100, 102, 103, 79 C. C. A. 142, 144 (C. C. A. 2d).  Cf. Anheuser-Busch Brewing Association v. Fred Miller Brewing Co. (C. C.) 87 Fed. 864.

[2] The instances of the use by others of the term "Budweiser," cited by the defendant, fail, even when liberally construed, to indicate an intention upon the part of the complainant to abandon its right to that name.  "To establish the defense of abandonment it is necessary to show not only acts indicating a practical abandonment, but an

actual intent to abandon." Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 31, 21 Sup. Ct. 7, 11 (45 L. Ed. 60).

[3] The defendant did not, according to its president, begin to market its "Budweiser Malt Syrup" before July, 1920. The complainant filed its application for the registration of "Budweiser" as a trademark for malt syrup on August 12, 1920. It specifically objected to use of the term by the defendant as early as September, 1920. There is no evidence of estoppel or laches of which the defendant may take advantage.

[4] The defendant maintains, however, that a trade-mark for malt or cereal liquor such as beer or near-beer does not extend to malt syrup, which cannot be sold in competition with, or be mistaken for, cereal beverage. But it is difficult to distinguish this case from Aunt Jemima Mills Co. v. Rigney, 247 Fed. 407, 409, 410, 159 C. C. A. 461, 464 (L. R. A. 1918C, 1039) where the same point was made as to a trade-mark for pancake flour being applied to pancake syrup, and the Court of Appeals for this circuit said:

"To use precisely the same mark, as the defendants have done, is, in our opinion, evidence of intention to make something out of it—either to get the benefit of the complainant's reputation or of its advertisement or to forestall the extension of its trade. There is no other conceivable reason why they should have appropriated this precise mark. The taking being wrongful, we think the defendants have no equity to protect them against an injunction, unless they get it from a consideration now to be examined.

"It is said that even a technical trade-mark may be appropriated by any one in any market for goods not in competition with those of the prior user. This was the view of the court below in saying that no one wanting syrup could possibly be made to take flour. But we think that goods, though different, may be so related as to fall within the mischief which equity should prevent. Syrup and flour are both food products, and food products commonly used together. Obviously the public, or a large part of it, seeing this trade-mark on a syrup, would conclude that it was made by the complainant. Perhaps they might not do so, if it were used for flatirons. In this way the complainant's reputation is put in the hands of the defendants. It will enable them to get the benefit of the complainant's reputation and advertisement. These we think are property rights which should be protected in equity. We have held in Florence v. Dowd, 178 Fed. 73, 101 C. C. A. 565, that a manufacturer of hair brushes under the trade-mark 'Keepclean,' who did not make toothbrushes, is entitled to be protected against the unfair competition of one who manufactures toothbrushes under the trade-mark 'Sta Kleen.' So in Collins Co. v. Oliver Ames Co. (C. C.) 18 Fed. 561, a manufacturer of metal articles, which had never made shovels, was granted an injunction preventing the defendant from putting the complainant's trade-mark on its shovels."

[5] The fundamental question in cases of trade-mark or unfair competition—and "in fact the common law of trade-marks is but a part of the broader law of unfair competition" (Hanover Milling Co. v. Metcalf, supra)—is whether the public is being misled and deceived, so that a defendant is in effect taking the advantage of the good will and business reputation that a complainant has built up through service or advertising or in any manner regarded as lawful and proper.

The defendant contends that beer is not a malt product and should not be so considered, but the ordinary man, in my judgment, would not, and the judge should not, make this distinction. Malt is known to be an ingredient of beer, and Budweiser malt syrup suggests at once to the

unsophisticated a by-product of Anheuser-Busch. Even did the complainant not contemplate dealing in malt syrup, as it appears that it does, the public would none the less be inclined to believe that the syrup was its product, and it is not necessary for the complainant to prove that the product is actually inferior to protect itself from the misuse of its name and good will. The large number of inquiries which came to the complainant following the circularizing of the trade by the defendant indicated that those well informed in the trade thought that the complainant was being imposed upon and that they did not desire to participate in the imposition.

Whether this decision and the law in this circuit are reconcilable with the decision of Judge Carpenter in the Northern district of Illinois, in the case of Pabst Brewing Co. v. Decatur Brewing Co., decided on rehearing May 11, 1921 (motion for second rehearing denied July 8, 1921),[1] where it was held that the trade-mark "Blue Ribbon" for beer did not prevent the use of a similar mark for malt syrup, it is not necessary for me now to decide. It might, however, well be contended that the term "Blue Ribbon" is not necessarily so distinctive as "Budweiser." It should be noted, too, that Judge Carpenter was of opinion in that case that "the public would not be confused on the facts in this record"; and that he was not concluded by the binding authority of the Aunt Jemima Case.

I have had the opportunity of studying the able briefs in the Illinois case. That and my respect for Judge Carpenter's views have caused me to hesitate in granting relief, especially before final hearing. But as the facts involved are matters of common knowledge or of documentary evidence, as to which there can be little dispute, it seems to me that justice and the interest of all parties will better be served by the granting of the motion for a preliminary injunction as prayed for.

---

[1] Affirmed by the Circuit Court of Appeals, 284 Fed. 110.