### In re PLYMOUTH MOTOR CORPORATION.

Patent Appeal No. 2510.

Court of Customs and Patent Appeals.
Jan. 12, 1931.

LENROOT, Associate Judge, dissenting.

J. King Harness, of Detroit, Mich., and Chas. M. Thomas and F. D. Thomas, both of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

In the final analysis, the determination of the issue of this case must turn largely upon the construction of the word "merely" as same is used in that clause of section 5 of the Trade-Mark Registration Act (15 USCA § 85) which provides:

"That no mark which consists merely in * * * a geographical name or term, shall be registered under the terms of this subdivision of this chapter."

Applicant seeks to register a mark which comprises a picture, or drawing, of a sailing vessel on the sea and the words "Chrysler Plymouth," for use on "automobiles and their structural parts, in class No. 19, vehicles, not including engines."

The Examiner refused registration unless applicant would disclaim the word "Plym-

outh." This applicant declined to do, and, upon appeal, the Commissioner of Patents affirmed the decision of the Examiner, and appeal was then taken to this court.

The decisions of the tribunals below were predicated upon the idea that the word "Plymouth" was merely a geographical name or term, the city of that name, in England, "located at the mouth of the Plym River," and a large number of other municipalities and post offices, "directly or indirectly named after the great English sea port," being cited.

It is the insistence of appellant that the word "Plymouth" has ceased to have a merely geographical meaning; that it is associated in popular thought with the landing in America of the group known as "Pilgrims"; that the word brings to mind certain qualities of "endurance," "strength," "enterprise," "honesty," and "determination" which history is wont to ascribe to those who founded the "Pilgrims' Colony," and that it is the significance of those qualities which appellant desires to avail itself of in the use of the mark containing the word.

In support of its legal right to register, appellant has directed attention to a large number of registered marks which include the word "Plymouth," and has also pointed out the use of the word in connection with apartment houses, churches, various kinds of business houses, restaurants, etc.

It is elemental legal doctrine that the Federal Trade-Mark Registration Act (15 USCA §§ 81–109) subtracts nothing from, and makes no addition to, the common-law rights relating to trade-mark ownership and use, except as it furnishes an official forum where owners of marks may have them registered and made public, the machinery for such registration being provided. The act also contains provisions which affect the remedies of an owner in enforcing his or its rights, but, in so far as actual ownership of, or rights in, a mark are concerned, these are determined wholly by common-law principles.

In order to register, the claimant must be the "owner" of the mark offered. The weight of authority is to the effect that the statute makes no effort to set up a right of ownership, or use, which the common law does not or may not recognize.

To the extent that Congress undertook, in the registration act, specifically to define what marks "shall not be refused registration" and what marks "shall not be registered," it merely sought to embody in the statute the principles of the common law, largely

as the same has been interpreted and applied by the courts throughout the centuries.[1]

These general recitals of law, believed to be so well known and widely recognized as to require no citation of authority in their support, are here stated because of the apparent necessity of determining in this case whether the courts, in applying the common-law doctrine, have evolved and asserted principles which enable applicant to acquire such an ownership of the mark in issue as to render such mark eligible for registration.

The right of registration is all that we have to determine here. If the registration be granted and any issues arise as to the extent of appellant's rights, or as to the limits within which it may use the mark, such issues must be decided in some other proceeding.

It seems to us that the use of the word "merely" in the statute is quite significant, and must necessarily be given its proper meaning and weight.

Funk and Wagnalls' Standard Dictionary gives the following definitions of the word:

"Merely. 1. Without including anything else; purely; only; solely.

2. Absolutely; wholly."

The word "mere" is defined:

"1. Such (as is mentioned) and no more; nothing but; sheer; simply; as, a *mere* child. (Italics quoted).

"2. *Law.* Executed by specified persons, entirely, unaided.

"3. Absolute; entire; unqualified;

"4. Pure; unmixed." (Italics quoted.)

The word "merely," as it appears in the statute now before us, has received construction where used before the word "descriptive." In Hercules Powder Co. v. Newton, 266 F. 169, 172, the United States Circuit Court of Appeals, Second Circuit, said (the issue being the right to register):

" 'Merely descriptive' means *only* descriptive, or *nothing more than* descriptive. It may be that the force of the adverb is satisfied by the addition to the descriptive word of a picture or device, or by qualifying the

[1] It has been suggested that, by the enactment of the ten-year clause of section 5 (15 USCA § 85), the Congress may have made eligible for registration some marks which the common law might not recognize or uphold. See expressions in Hercules Powder Co. v. Newton (C. C. A.) 266 F. 169, 171. That phase of the statute is not here involved. An interesting discussion is found in Scandinavia Belting Co. v. Asbestos & Rubber Works of America (C. C. A.) 257 F. 937.

description through the addition of another word. Thus in Re Crosfield, supra (page 143) [this reference being to In re Crosfield (1910) L. R. I Ch. 130], it was suggested that, while appellant could not use the word 'Perfection' as a trade-mark for soap, if he used 'Crosfield's Perfection, different considerations might arise.' " (Italics ours.)

■ It is, of course, fundamental in trade-mark law that a "geographical name or term, by which is meant a term denoting locality, cannot be exclusively appropriated as a trade-mark because such a term is generic or descriptive, and any one who can do so truthfully is entitled to use it." See 15 USCA § 85, note 22, p. 60, and list of authorities there cited.

■ But it is well settled, we think, that a geographic name or term may acquire such a secondary meaning as to remove it from the "generic or descriptive" designation which renders it incapable of individual appropriation, and make it subject to rights which equity will, within proper limits, protect. In other words, a geographic name can, and frequently does, acquire a meaning which causes it to become something other than *merely* geographic, or solely geographic, or only geographic.

In Katschinski v. Keller et al., 49 Cal. App. 406, 193 P. 587, 589, the second division of the California District Court of Appeal, First District, said:

"When a geographic name is not used in a geographical sense, but is used in a fictitious sense merely to indicate ownership, independent of location, it may be a good trade-mark or trade-name. Drake Medicine Co. v. Glossner, 68 Ohio St. 337, 67 N. E. 722, 727; Sanders v. Utt, 16 Mo. App. 322, 326."

Other holdings bearing upon the question will be found in Phenix Cheese Co. v. Kirp (1917) 176 App. Div. 735, 164 N. Y. S. 71; Havana Commercial Co. v. Nichols (C. C. N. Y. 1907) 155 F. 302.

Appellant's brief cites us to Ex parte Jewell Belting Co., 110 O. G. 309, 1904 C. D. 150.

Registration was there sought of the word "Gibraltar" as a trade-mark for belting. The Examiner refused it, on the ground that the word was geographical. The Commissioner of Patents reversed the decision of the Examiner, saying, among other things:

"I am unable to agree with the conclusion that the effective significance of the word would be geographical if it were used as a mark upon goods such as belting. It un-doubtedly has a geographical meaning; but when seen upon goods one of the essential characteristics of which is strength it is believed that the arbitrary meaning of the word would so far transcend its geographical meaning in the mind of the ordinary purchaser as to render the geographical meaning of comparative insignificance. It is not believed that purchasers would suppose that the goods were manufactured at Gibraltar. They are, in fact, manufactured by the appellant at Hartford, Conn."

■ The applicant in the instant case is not located at Plymouth, but in the city of Detroit, Mich. There is no reason to suppose that the word has any location significance as used by it. It is proposed to register the word, not alone, but in combination with "Chrysler," and a drawing of a sea-going vessel.

We think the notation, as a whole, comprises a designation, not merely geographic, and that appellant is entitled to the registration sought.

In reaching this conclusion, we have not given very great weight to the argument based upon the numerous prior registrations of the word "Plymouth."

A large number of these marks, if not all, were registered under the ten-year clause of the registration statute, and, as the Commissioner correctly said, "in consequence, escape the bar of the statute against merely geographical marks."

We think the decision may properly rest upon the fact that, by using the adverb "merely," Congress intended to, and did, follow the common-law principle that there are circumstances under which a geographic name, or term, may come to have a meaning other than one merely geographic, and that, where such is true, the word, so recognized or recognizable, at common law, should not be excluded from registration.

Such a meaning may grow up around a word when that word is used alone. We think that is true, to a certain extent, of the word "Plymouth." But this case does not need to rest upon this alone, because appellant presents a notation which comprises another word and a figure to be used in connection with "Plymouth," so that the combination quite clearly, it seems to us, constitutes a mark carrying no merely geographical significance, as appellant uses it. The geographical feature is, at least, made so remote as that we cannot agree that the mark is merely geographic.

Appellant will be granted the registration as sought, and to this end the decision of the Commissioner is reversed.

Reversed.

GRAHAM, Presiding Judge, concurs in the conclusion.

LENROOT, Associate Judge, dissents.