## R. W. ELDRIDGE CO., Inc., v. SOUTHERN HANDKERCHIEF MFG. CO.

### No. 540.

District Court, W. D. South Carolina.

May 7, 1938.

Henderson & Henderson, of Charlotte, N. C., and G. H. Cleveland, of Greenville, S. C., for plaintiff.

Haynsworth & Haynsworth, of Greenville, S. C., for defendant.

WYCHE, District Judge.

This is a suit by the plaintiff to restrain the defendant from interfering with its alleged right to use the term "All American" in connection with the sale of handkerchiefs, and to enjoin the defendant from attempting to register the term as its trade-mark. The defendant answered and filed a cross-bill alleging that the term "All American" was its trade-mark for handkerchiefs, and that it had been infringed by the plaintiff.

The defendant began to use the term "All American" in connection with the sale of its handkerchiefs on December 3, 1936. Some months later the plaintiff determined to use the same term in connection with the sale of its handkerchiefs. The defendant, learning of the plaintiff's preparations, notified the plaintiff of the defendant's prior use and its claim of exclusive right to the term as a trade-mark for handkerchiefs.

Thereafter, both parties, the defendant a few days before the plaintiff, filed with the Commissioner of Patents in Washington applications to register the term "All

182

American" as a trade-mark for handkerchiefs; each claiming the right to the term as a trade-mark for its handkerchiefs. Both applications having proceeded to publication, an interference was declared between them. No final order had been made by the Examiner of Interference at the time of the institution of this suit. By agreement of the parties, the only question for me to decide at this time is whether or not the plaintiff is entitled to the injunctive relief prayed for.

■ In order to set in motion the processes of this court a plaintiff must prove that the defendant has acted or threatens to act wrongfully or in excess of its legal rights, and that in so acting the defendant has invaded some right of the plaintiff that is entitled to judicial protection. These things the plaintiff has failed to prove.

■ It is not suggested that in notifying the plaintiff of its claim of exclusive right in the term "All American" the defendant acted in bad faith. It is not suggested that the defendant acted in bad faith in applying, as later the plaintiff did, for registration of the term as a trade-mark. It is abundantly apparent that the defendant acted in good faith for the quite commendable purpose of preserving and protecting what it honestly believed its own legal rights. In May, 1937, when the defendant learned of the plaintiff's preparations to use the term "All American," and believing that it had an exclusive right to such use, the defendant had two courses open to it: (1) It could immediately notify the plaintiff; or (2) it could sit idly by and permit the plaintiff to expend money and effort in the purchase of labels and advertisement of the term "All American." The second course would either occasion the plaintiff much damage, or the defendant would have found itself barred by laches. The defendant took the first alternative; the much more ethical procedure.

The plaintiff does not claim that it has an exclusive right to the use of the term "All American," nor does it deny that the defendant has the right to use the term. Under such circumstances, if the plaintiff suffered any damage by reason of the defendant's acts it is damnum absque injuria, for the plaintiff has no right of freedom from lawful competition. Had the defendant acted not for the legitimate purpose of protecting its own interests, but solely with the malicious intent of injuring the plaintiff's business, a different case might be presented; but there was no malice here.

■ In most of the decided cases on the subject there was not only notice to the competitor of claimed infringement, but circularization of the competitor's customers. Such cases, however, clearly set forth the applicable legal principles.

In Alliance Securities Co. v. De Vilbiss Mfg. Co., 6 Cir., 1930, 41 F.2d 668, 670, the court said, in holding that there was no cause of action because of claims of patent infringement made to the plaintiff and its customers: "We are aware of no ground upon which claims of infringement made by a patentee can be considered a legal wrong unless those claims are made in bad faith; that is, maliciously. This bad faith may be made to appear in a variety of ways, but until it does appear the patentee has the right to notify all those whom he believes to be infringing that he will hold them for such liability as he may be able to establish; indeed, it has been said that it is his duty to do so, and it is apparent that under some circumstances he may lose rights if he does not do so."

In Oil Conservation Engineering Co. v. Brooks Engineering Co., 6 Cir., 1931, 52 F.2d 783, the complainant filed a bill in equity alleging that the defendant was wrongfully claiming trade-mark and patent infringement by the complainant, and that the defendant was not suing for such infringement, and alleging that this constituted unfair competition, asking for an injunction and for damages. The court held that there was no cause of action in the absence of malice, and, although there was actually no trade-mark or patent infringement, the defendant's patent being technically invalid, the defendant had acted in good faith in the belief that there was infringement, and there was good explanation for its failure to sue. The court said in that decision (page 786): "It [the defendant] is not to be condemned for claiming infringement and giving reasonable notice or notices of its claims."

In New Discoveries, Inc., v. Wisconsin Alumni Research Foundation, D.C.Wis. 1936, 13 F.Supp. 596, 598, it was said that "Notice to a competitor that he is infringing is the usual and ordinary procedure

followed by patentees, and is not to be condemned when characterized by good faith."

The cases permitting such suits recognize that they are grounded upon malice. So in A. B. Farquhar Co. v. National Harrow Co., 3 Cir., 1900, 102 F. 714, 715, 49 L.R.A. 755, the court said in overruling a demurrer to a bill to enjoin threats of suit for alleged patent infringement: "Where notices are given or circulars distributed in good faith to warn against infringement, no wrong whatever is committed; but where, as is here averred, they are not made or issued with such intent, but in bad faith, and solely for the purpose of destroying the business of another, a very different case is presented."

■ Failure to bring suit in support of such claims is indicative of bad faith only when the claimed infringement is continuous and defiant, where there is opportunity to sue and long-continued, arbitrary refusal to do so, accompanied by circulation of threats to the competitor and the competitor's customers.

Adriance, Platt & Co. v. National Harrow Co., 2 Cir., 1903, 121 F. 827; Racine Paper Goods Co. v. Dittgen, 7 Cir., 1909, 171 F. 631.

■ While the defendant had not brought suit against this plaintiff for infringement, there is ample explanation for its failure to do so. The infringement ceased after May, 1937. The defendant had a perfect right to delay suit until it had perfected its procedural advantage by obtaining registration of its trade-mark. As soon as the plaintiff attempted to bring this matter into this court, the defendant immediately counterclaimed on the ground of infringement.

■ The plaintiff was not without opportunity to have a full determination of the matter. The defendant had applied for registration in the office of the Commissioner of Patents of the term as its trade-mark, and an interference was declared between that application and the plaintiff's. In that interference proceeding, both the defendant and the plaintiff being parties thereto, the plaintiff might have raised any question it wished as to the right of the defendant to the term "All American" as a trade-mark. 15 U.S.C.A. § 87; John Wood Mfg. Co. v. Servel, Inc., Cust. & Pat.App.1935, 77 F.2d 946; Coschocton Glove Co. v. Buckeye Glove Co., Cust. & Pat.App.1937, 90 F.2d 660. In the event of an adverse decision by the Examiner of Interferences there is provision for appeal to the Commissioner of Patents, 15 U.S.C.A. § 88, and from the Commissioner to the United States Court of Customs and Patent Appeals, 15 U.S.C.A. § 89. The act further provides for cancellation of a registered trade-mark by an interested party on a showing that the registrant was not entitled to registration. 15 U.S. C.A. § 93; Barber-Colman Co. v. Overhead Door Corporation, Cust. & Pat.App. 1933, 65 F.2d 147.

The cases cited by the plaintiff to sustain its right to sue are all decisions of the United States Court of Customs and Patent Appeals or that court's predecessor, the Court of Appeals of the District of Columbia, on appeals from decisions of the Commissioner of Patents. Those cases fully sustain the plaintiff's right to have all issues fully determined through the procedure provided in the Trade-Mark Act of 1905, 15 U.S.C.A. § 81 et seq. They do not hold that the District Court has equity jurisdiction to enjoin an applicant from proceeding to register a trade-mark.

■ It seems to me, therefore, that the federal laws relating to trade-marks afford plaintiff an adequate remedy at law for the protection of any rights he claims in his complaint, and the plaintiff has shown no equity jurisdiction in this court.

■ Even if this court has equity jurisdiction to determine the questions involved, it is my opinion that the term "All American" as a trade-mark for handkerchiefs is registerable. The defendant claims no trade-mark rights in the descriptive words "Full Combed" that appear on one of its "All American" labels, or in the descriptive words "Made by American Labor, etc.," that appear on its other "All American" label.

It has not applied for registration of any label. It has applied for registration of the words "All American" as its trade-mark for handkerchiefs. In connection with such application it filed copies of one of its labels as a specimen of the use by the defendant of the trade-mark. It did not file copies of the other labels, for it is not required that copies of every method of use of a trade-mark be filed; five specimens of one example of its use are sufficient. The plaintiff's application is

precisely the same. The plaintiff applied for registration of the words "All American" as its trade-mark, and filed as a specimen of its use five copies of its large label.

The issue is the right to the term "All American" as a trade-mark for handkerchiefs. There is here no question of any trade-mark rights in any other words or in any label.

█ It is common knowledge that the term "All American" has a peculiar significance in the realm of sports. To almost every American, indeed, to every high school boy, the term indicates supremacy, superiority, and distinction in the athletic world. It was because of this significance, this meaning of the term, that it was finally adopted by the defendant as its trade-mark.

█ The defendant is the prior user of the term "All American" in connection with the sale of handkerchiefs. The defendant had used both of its "All American" labels for some months before the plaintiff made any use of the term. In view of that prior use, if the term "All American" is not solely geographical in its significance, that is, merely geographic, the defendant is entitled to its exclusive use as a trade-mark for handkerchiefs.

█ It is, of course, true that the name of a country, a section or region, or a city, is not, when standing alone, subject to exclusive appropriation as a trade-mark. Thus, "American" standing alone, is not subject to exclusive appropriation. In re American Steel & Wire Co., Cust. & Pat.App.1936, 81 F.2d 397. "Lackawanna," standing alone, is merely the name of a section of Pennsylvania, and is not subject to exclusive appropriation. Delaware & H. Canal Co. v. Clark, 1871, 13 Wall. 311, 20 L.Ed. 581. So "Elgin," standing alone, is merely the name of a town in Illinois, and is not subject to exclusive appropriation. Elgin National Watch Co. v. Illinois Watch Case Co., 1901, 179 U.S. 665, 21 S.Ct. 270, 45 L. Ed. 365.

█ A word ordinarily geographic, however, may acquire a secondary meaning or lose its merely geographic significance by being coupled with another word and thus become subject to appropriation. It has thus been held that "The American Girl" when applied to shoes is not geographic and descriptive as indicating that the shoes were made in America for women, but is a fanciful term and a valid trade-mark. Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 1916, 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629. So in Dennison Manufacturing Co. v. Thomas Manufacturing Co., C.C.Del.1899, 94 F. 651, it was held that the words "American Express" were subject to appropriation as a trade-mark, and "American Beauty" has been registered as a trade-mark some twenty-two times. See National Biscuit Co. v. Sheridan, Cust. & Pat.App.1931, 44 F.2d 987. There is thus no special immunity in the word "American" except when used alone or in conjunction with other words that do not alter its merely geographic meaning.

The word "Plymouth" was originally merely geographic, but it has acquired a secondary meaning that makes it subject to appropriation as a trade-mark. In re Plymouth Motor Corporation, Cust. & Pat. App.1931, 46 F.2d 211. In that case the court stated the contentions of the applicant as follows (page 212): "It is the insistence of appellant that the word 'Plymouth' has ceased to have a merely geographical meaning; that it is associated in popular thought with the landing in America of the group known as 'Pilgrims'; that the word brings to mind certain qualities of 'endurance,' 'strength,' 'enterprise,' 'honesty,' and 'determination' which history is wont to ascribe to those who founded the 'Pilgrims' Colony,' and that it is the significance of those qualities which appellant desires to avail itself of in the use of the mark containing the word."

The court sustained the contention and held the word "registerable" as a valid trade-mark, saying (page 213): "But it is well settled, we think, that a geographic name or term may acquire such a secondary meaning as to remove it from the 'generic or descriptive' designation which renders it incapable of individual appropriation, and make it subject to rights which equity will, within proper limits, protect. In other words, a geographic name can, and frequently does, acquire a meaning which causes it to become something other than merely geographic, or solely geographic, or only geographic."

The words "Old South" refer to a section of the United States, but it was held by the Circuit Court of Appeals for the Fourth Circuit in Southeastern Brew-

ing Co. v. Blackwell, 1935, 80 F.2d 607, certiorari denied 297 U.S. 717, 56 S.Ct. 591, 80 L.Ed. 1002, that the words "Old South" also referred to a period in history, and that because of this secondary significance they were subject to exclusive appropriation as a trade-mark for beer. Judge Soper dissented in that case, but solely on the ground that the prevailing party had not actually used the words on beer, but had only advertised an intention to do so.

While in Old Lexington Club Distillery Co. v. Kentucky D. & W. Co., D.C., 234 F. 464, it was held that the plaintiff was barred by laches from suing the defendant for infringement, the court said that "Old Lexington Club" was a valid trade-mark for whiskey, even though "Lexington," standing alone, was merely geographic.

The Circuit Court of Appeals for the Fourth Circuit in W. G. Reardon Laboratories v. B. & B. Exterminators, 1934, 71 F.2d 515, in holding the terms "Mouse Seed" and "Rat Seed" not offensively descriptive as applied to rodent exterminators, among other things, said (page 517): "Every one is entitled to fairly describe the goods which he makes or sells and a mere descriptive mark or name cannot be appropriated as a trade-mark to the exclusion of all others who wish to use the same words. [Authorities cited.] Such words, if descriptive only, will not be valid as a trade-mark if reasonably indicative of the general nature or character of the article. [Authorities cited.] But, however, if the words are merely suggestive of the character of the goods or the properties which the users of the mark wish the public to attribute to them and not merely descriptive, the mark will be good. [Authorities cited.] The only question in this case, as to the trade-mark, is whether it is descriptive only and not susceptible of exclusive appropriation or whether it is uniquely suggestive."

While that case dealt with a trade-mark challenged only on the ground of descriptiveness, exactly the same considerations apply when considering a challenge of a trade-mark on the ground that it is geographic. Southeastern Brewing Co. v. Blackwell, supra.

"All American" is suggestive of the geographic origin of the goods, but suggestiveness is no objection to a trade-mark. W. G. Reardon Laboratories v. B. & B. Exterminators, supra.

As was said by the Court of Customs and Patent Appeals in Re Vortex Cup Co., 83 F.2d 821, in holding the word "Trophy" not merely descriptive of high quality, a prize-winner (page 822): "* * * a valid trade-mark may be highly suggestive (In our opinion ofttimes the best ones are), without being offensively descriptive."

The term "All American" is suggestive of distinction, accomplishment, hardihood, supremacy, superiority, strength, endurance. In the sports pages of newspapers, in feature articles in magazines, in news reels, in many other places, a vast majority of Americans annually come into frequent contact with such terms as "All American" and "All Southern." That vast body of Americans would immediately think of achievement in sport when hearing the term "All American." When referring to an "All American" quarterback, that vast body of Americans would think of the best quarterback in college football of the year. When the defendant applied the term to its handkerchiefs, i. suggested to the American public that its handkerchiefs possessed merit, distinction, and superiority. No more well-established secondary meaning can be imagined than that of the term "All American." It is a term of double meaning, and to that fact it largely owes its value as a trade-mark. This case is thus brought clearly within the principle of In re Plymouth Motor Corporation, supra (Plymouth), and Southeastern Brewing Co. v. Blackwell, supra (Old South).

The Trade-Mark Act of 1905 in its provisions relating to registerability of trade-marks is merely declaratory of the common law on the appropriation of trade-marks. That act provides in section 85, 15 U.S.C.A., that a trade-mark that is "merely a geographic name or term" shall not be registered. In re Plymouth Motor Corporation, supra, (page 212) quoting Hercules Powder Co. v. Newton, 2 Cir., 266 F. 169, 172, it is said: "'Merely descriptive' means only descriptive, or nothing more than descriptive."

So "merely geographic" means only geographic or nothing more than geographic, and it was so held in the Plymouth Case. The term "All American" with its well-established secondary meaning is thus not within the prohibition of the act.

I must therefore conclude that the plaintiff is not entitled to the injunction prayed for.

Counsel may present an order in accordance with the views herein expressed.

The findings of fact and conclusions of law, required by the Federal Equity Rule 70½, 28 U.S.C.A. following section 723, have been made, and will be filed herewith.