## In re GENERAL PETROLEUM CORPORATION OF CALIFORNIA.
### Patent Appeal No. 2755.

Court of Customs and Patent Appeals.
May 27, 1931.

Wm. Wallace White and Wallace White, both of New York City (Joseph W. Milburn, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C., for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Appellant is, and for some time has been, engaged in the business of selling gasoline sold in bulk. In June, 1928, it began to introduce into its product a sufficient quantity of violet coloring matter to give a violet hue to the entire mass of gasoline so treated. The claim is that the introduction of this coloring matter was and is for no functional purpose, but solely for the purpose of distinguishing appellant's gasoline from the gasoline marketed by other dealers, thus indicating origin. This is claimed to be a trade-mark use of the violet color, and in July, 1928, appellant filed, in the United States Patent Office, application for the registration of the violet color for use in gasoline as a trade-mark for such gasoline, under the Trade-Mark Registration Act of February 20, 1905 (15 USCA §§ 81–109).

In the application it was stated: "The trade mark is applied to the goods by the addition of a violet coloring matter which permeates the goods."

Registration was refused by the examiner on the ground, that, as a general proposition of law, color alone cannot constitute a trademark. Upon appeal the decision on this ground was affirmed by the Commissioner of Patents, and the instant appeal to this court was then taken.

There are several assignments of error, but all of these may be treated as comprehended in No. 9 thereof, reading: "The Commissioner erred in rejecting the application on account of the nature of the mark."

Appellant's drawing discloses the figure of a conventional stand, such as is used at gasoline filling stations, showing the usual transparent receptacle at the top from which gasoline flows by force of gravity. By means of diagonal lines, drawn on the representation of the transparent device, indication is given that the gasoline within the receptacle is colored, and on one side of the receptacle, with an indicating arrow, the word "violet" appears. Nothing is claimed, however, for the figure of the stand nor for the word, the latter being inserted merely to explain what the color is. The claim is confined entirely to the color itself, independent of any figure, word, device, symbol, or design.

In the opinion of the commissioner it is stated: "In the brief the appellant proposes to amend the application to state 'the mark consists of violet coloring matter intimately mixed or dissolved in the gasoline.'"

There does not appear to have been any formal ruling upon this amendment, but it seems fairly inferable that the commissioner treated it as being allowed and we are content so to treat it.

■ We are not persuaded that the concurring decisions of the tribunals of the Patent Office are erroneous. The issue presented is somewhat novel, so far as the cases that have reached this court are concerned; but persuasive authority for their decisions herein is to be found in numerous decisions of other courts.

■ Independent of the authorities, in the absence of any controlling adjudications to the contrary, it seems to us that, in all good reason, it must be held that the trade-mark registration statute did not contemplate color

alone, as appellant here applies it, as a mark to be registered as a trade-mark.

Appellant has quite earnestly stressed the statement of the statute: "That no mark by which the goods of the owner of the mark may be distinguished from other goods of the same class be refused registration as a trade mark on account of the nature of such mark. * * *"

We fully appreciate the binding force of the quoted language, but before it can be applied the matter which it is proposed to register must be a *mark,* in a trade-mark sense. The word "nature" in the statute must be construed with that understanding of the meaning of the word "mark."

■■ Trade-mark ownership carries with it a monopoly upon the mark, but does not, of itself, carry with it the right of a monopoly upon the product or goods to which the mark is applied. If the mere color of violet applied to gasoline in the manner described, so as to render the entire volume of the gasoline violet-hued, could be treated as a trade-mark, it would result that appellant would secure a potential monopoly for an indefinite period, not simply upon the mark, but upon violet-colored gasoline itself. Such a mark we think would not be a good trade-mark at common law, and, repeatedly, we have held, following numerous authorities, that, since the registration statute created no new rights of trade-mark ownership, it did not contemplate the registration of marks incapable of common-law ownership. B. F. Goodrich Co. v. Kenilworth Mfg. Co., 40 F.(2d) 121, 17 C. C. P. A. 1105; Sun-Maid Raisin Growers of California v. American Grocer Co., 40 F.(2d) 116, 17 C. C. P. A. 1034; American Steel Foundries v. Robertson, 269 U. S. 372, 46 S. Ct. 160, 70 L. Ed. 317; In re Bonide Chemical Co., 46 F.(2d) 705, 18 C. C. P. A. ——, with their respective citations.

The authorities cited in the decisions of the Patent Office tribunals and in the brief of the solicitor for the patent office are very persuasive, if not absolutely controlling. A. Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co., 201 U. S. 166, 26 S. Ct. 425, 50 L. Ed. 710; Ex parte Pearson Tobacco Co., 1898 C. D. 643, 85 O. G. 287; Diamond Match Co. v. Saginaw Match Co. (C. C. A.) 142 F. 727, 729; Newcomer & Lewis v. Scriven Co. (C. C. A.) 168 F. 621; Taylor v. Bostick (C. C. A.) 299 F. 232; Coca-Cola Co. v. Williamsburgh Stopper Co. et al. and Coca-Cola Co. v. Whittemann et al., 2 T. M. Rep. 234; Goodyear Tire Co. v. Thomas E. Robertson, Commissioner of Pat-

ents (C. C. A.) 25 F.(2d) 833; Ex parte Landreth, 1885 C. D. 90, 31 O. G. 1441.

All these cases sustain the general principle very well stated in the Diamond Match Co. Case, supra: "Sometimes a color, taken in connection with other characteristics, may serve to distinguish one's goods, and thus be protected by the courts, * * * but, as a rule, a color cannot be monopolized to distinguish a product."

Appellant's fifth assignment of error is as follows: "The Commissioner erred in disregarding and refusing entirely to consider the cited decision of the Texas Court of Appeals holding that color as a means of identification in the manufacture and sale of goods is governed by the same rule as the use of geographical names in the same connection."

■ As phrased, this assignment of error need not necessarily be given any particular consideration by us. We do not find the case therein mentioned alluded to elsewhere in the record. Even the style of it is nowhere given therein, nor is it cited in the brief before us. It may have been brought to the commissioner's attention in argument. If so, we have no evidence of his "disregarding and refusing entirely to consider" it. In any event, it is not a valid assignment of error. It would be rather presumptuous for this court to undertake to control the mental processes of the Commissioner of Patents.

However, in a brief in the case of In re Sun Oil Company which involves the same question here presented, and which is being decided concurrently herewith, 49 F.(2d) 965, 18 C. C. P. A. ——, we have found a citation of a Texas case to which it is assumed allusion was made, and, because of its nature and alleged bearing upon the question at issue, we deem it not improper briefly to refer to it. Apparently, the case is that of Clifton Mfg. Co. v. Crawford-Austin Mfg. Co. (Tex. Civ. App.) 12 S.W.(2d) 1098, 1102, 19 T. M. Rep. 102.

The suit was in the state courts of Texas, the decision cited being by the Court of Civil Appeals of that state. It involved a question of alleged unfair competition and no trade-mark issue was presented.

Both parties thereto appear to have been manufacturers of, and dealers in, tents, tarpaulins, and wagon covers.

The appellee therein began the use of a material which had a color referred to as "a russet or reddish brown." Appellant therein began to use a material having the

same color. Appellee sought an injunction to prevent appellant from using it. The district court granted a temporary restraining order, and, upon appeal, the Court of Civil Appeals declined to dissolve this temporary order, with the statement: "The testimony discloses that the alleged imitation of appellee's distinctive color in the manufacture by appellants of the articles in question had just begun, and fails to show that appellants were likely to suffer any material injury by being temporarily restrained from manufacturing and selling such articles in such specific color. In view of such situation and the testimony introduced at the hearing, we are not prepared to say that the trial court abused his discretion in granting temporary restraint."

The case probably went to trial in the district court of Texas on the merits, but this court is not advised as to that or as to its final outcome.

The Texas court indulged in a discussion comparing the use of a distinctive color, in an unfair competition proceeding, with the use of geographical names in the same connection, and cited several familiar authorities. There is no hint in the case that the appellee therein was claiming or seeking to set up any ownership of trade-mark rights in the color, such as appellant herein is seeking. The Clifton Case, supra, is not an authority of value in this proceeding. Appellant's other authorities we think also inapplicable to the particular or direct question here involved.

There is cited as a precedent, which appellant earnestly insists is apropos, a registration of October 16, 1928, trade-mark 248,-219, to Delaware, Lackawanna & Western Coal Co. v. Blackwood Coal & Coke Company for coal. The certificate says: "The trade mark consists in coloring the surface of some of the lumps of coal in the mass blue, and the drawing is lined to indicate blue color."

The validity of this registration is not involved here and there is no occasion for intimating any opinion as to that. It seems sufficient to say that there is at least one distinction between that case and this, which lies in the fact that the color there does not become an integral portion of the goods, but is merely applied to surface. Here appellant's mark when applied to the goods becomes a part of the goods. That it is applied for distinguishing and not for functional purposes can make no difference, so far as the trade-mark registration act is concerned, since the effect is the same.

Hopkins on Trade-Marks (4th Ed.) p. 284, says: "The courts have been uniformly averse to recognizing anything remotely resembling a monopoly of color. There are not more than seven primary colors, and if one of these may be appropriated as a distinguishing characteristic of a label, it would not take long to appropriate the rest. * * * To allow colors to be appropriated as distinguishing characteristics would foster monopoly by foreclosing the use by others of any tasty dress."

Again at page 139, discussing "What Constitutes a Trade-Mark," the same author says: "Sec. 53. The trade-marked article not a trade-mark.—It is obvious that if a commercial article itself could constitute a trade-mark, there would be little use for patent laws. As Judge Carpenter said, "in the very nature of the case, * * * the trade-mark must be something other than, and separate from, the merchandise."

Appellant earnestly stresses the argument that gasoline being a liquid product, sold almost wholly in bulk, the coloring process furnishes the only practical method so far devised to assure adequate, full trade-mark protection. This may be true, but certainly this court has not the power to constitute something a trade-mark which is not a legal mark, in fact, simply because certain products, by reason of physical laws, are incapable of having the benefit, in the particular manner which may be wished, of an actual mark.

It may be said that, even if a legal trade-mark function could be given to color alone when it is an integral part of the goods, thereby saying, in effect, that the goods themselves may constitute their own trade-mark, by reason of one of their ingredients which affects the whole, the question of such a mark being merely descriptive of the goods would immediately arise. Obviously, the word "violet" applied to violet-colored gasoline would be descriptive of a character or quality of that particular gasoline, and hence could not be registered as a trade-mark by reason of the prohibition contained in the proviso of section 5 of the Trade-Mark Registration Act (15 USCA § 85). Since it is proposed to register the color itself instead of the name of the color, would such a mark be any less descriptive?

We cannot think so.

Color alone, as appellant applies it, is not capable of being treated as a trade-mark entitled to registration under the Trade-Mark Registration Act of February 20, 1905 (15 USCA §§ 81–109). Even were this not true, its registration would have to be denied on the ground that such mark is merely descriptive.

The decision of the Commissioner of Patents is affirmed.

Affirmed.