24 C.C.P.A.(Patents)

### In re CANADA DRY GINGER ALE, Inc.
#### No. 3698.

Court of Customs and Patent Appeals.
Dec. 21, 1936.

Edward S. Rogers, of Chicago, Ill., and Thomas L. Mead, Jr., of Washington, D. C., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

Appellant filed in the United States Patent Office an application for the registration, under the Trade-Mark Act of February 20, 1905, as amended (15 U.S.C.A. § 81 et seq.), of a map of Canada lined in colors, used by it as a trade-mark for maltless beverages sold as soft drinks. The application alleges that the mark has been continuously used and applied to said goods in the business of appellant and its predecessors since 1907. Five specimens were filed showing the mark as actually used by appellant upon the goods; these specimens, however, show the words "Canada Dry" printed across the face of the map, together with certain other words not here important.

The registration was refused by the Examiner of Trade-Marks upon the ground that appellant, in 1924, registered the mark here involved under the Act of March 19, 1920 (15 U.S.C.A. § 121 et seq.), and is therefore estopped from claiming registration of the same mark under the Act of February 20, 1905. So far as appears from the record, the registration under the act of 1920 has never been canceled. Upon appeal, the Commissioner of Patents affirmed the decision of the Examiner of Trade-Marks; however, he made no express finding upon the question of estoppel, but held that the mark was not a valid trade-mark at common law, and that such mark was intended to fall within the statutory prohibition of section 5 of the 1905 act, as amended (15 U.S.C.A. § 85). From such decision appellant took the appeal before us.

While appellant asserts that the mark here involved is a valid common-law trade-mark, we are clear that upon its face it is not such. To the eye of the observer it conveys the same idea that the word "Canada," without the map, would convey, and either the map of Canada or the word "Canada," applied to goods, would be understood by purchasers as indicating that the goods were produced in Canada. In the case of Delaware & H. Canal Company v. Clark, 13 Wall.(80 U. S.) 311, 324, 20 L.Ed. 581, the court said:

"And it is obvious that the same reasons which forbid the exclusive appropriation of generic names or of those merely descriptive of the article manufactured and which can be employed with truth by other manufacturers, apply with equal force to the appropriation of geographical names, designating districts of country. Their nature is such that they cannot point to the origin (personal origin) or ownership of the articles of trade to which they may be applied. They point only at the place of production, not to the producer, and could they be appropriated exclusively, the appropriation would result in mischievous monopolies. Could such phrases, as 'Pennsylvania wheat,' 'Kentucky hemp,' 'Virginia tobacco,' or 'Sea Island cotton,' be protected as trade-marks; could any one prevent all others from using them, or

from selling articles produced in the districts they describe under those appellations, it would greatly embarrass trade, and secure exclusive rights to individuals in that which is the common right of many."

While in the case last cited a geographical word, viz., "Lackawanna," was involved, it is well established that the use of a word has the same effect as the use of a picture if the word meaning is the same as the meaning of the picture. Heilbronn Co. v. Hammermill Paper Co., 48 F.(2d) 963, 18 C.C.P.A.(Patents) 1307. It necessarily follows that the converse must be true—that the use of a picture has the same effect as the use of a word if the picture means the same as the word.

The provisions of the Trade-Mark Act of February 20, 1905, here pertinent are as follows:

"Sec. 5. That no mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration as a trade-mark on account of the nature of such mark unless such mark—* * *

"Provided, That no mark which consists merely in the name of an individual, firm, corporation, or association not written, printed, impressed, or woven in some particular or distinctive manner, or in association with a portrait of the individual, or merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods, or merely a geographical name or term, shall be registered under the terms of this Act [subdivision of this chapter]." 15 U.S.C.A. § 85.

. The law is well settled that a mark which is not a valid trade-mark at common law is not registrable under the Act of February 20, 1905. In re General Petroleum Corporation of California, 49 F.(2d) 966, 18 C.C.P.A.(Patents) 1444, and cases therein cited.

From the foregoing we are clear that the mark here involved is not registrable under the first part of section 5 of the Act of February 20, 1905, and is in fact expressly prohibited under the above-quoted proviso of section 5 unless it should be held that, if a mark otherwise not registrable has acquired by long exclusive use a secondary meaning, it becomes by virtue thereof a valid trade-mark.

Upon this point appellant · relies upon our decisions in the cases of In re Plymouth Motor Corporation, 46 F.(2d) 211, 18 C.C.P.A.(Patents) 838, and In re California Perfume Co., Inc., 56 F.(2d) 885, 19 C.C.P.A.(Patents) 1028, while the Commissioner of Patents and the Solicitor for the Patent Office rely upon our later decision in the case of Barber-Colman Co. v. Overhead Door Corporation, 65 F.(2d) 147, 150, 20 C.C.P.A.(Patents) 1118.

In the case last cited we relied very largely upon the case of Elgin National Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365, (a case not cited in the decision in In re Plymouth Motor Corporation, supra) and, in our discussion of the registrability of a descriptive term having a secondary meaning, commented upon said Elgin Case as follows:

"The decision of the Supreme Court of the United States in the case of Elgin National Watch Co. v. Illinois Watch Case Co., 179 U.S. 665 [21 S.Ct. 270, 45 L.Ed. 365], is unusually pertinent to the facts at bar and the contentions of appellee. The court there held that words which were merely descriptive of the place where the articles were manufactured could not be monopolized as a trade-mark, and that the word 'Elgin' was such a term, and that, if it had acquired a secondary meaning in connection with its use, protection from imposition and fraud would be afforded by the courts, but that, notwithstanding this fact, its descriptive or geographic character rendered it unregistrable as a trade-mark. Applying the Elgin Case to the contentions of appellee, if its word has acquired a secondary meaning, the remedy for unfair competition or perfidious dealing by those who seek to profit on appellee's good will may be afforded in jurisdictions other than this, but, since the mark is descriptive of the goods, it should not have been registered."

We also cited and quoted from the decision in the case of Hercules Powder Co. v. Newton (C.C.A.) 266 F. 169, as follows:

"It is also reasonably inferable from this record that plaintiff feels unjustly treated by refusal to register a word which it has exclusively and successively used as a trade-mark for more than 10 years, but not for that · decade which alone secures protection under the 10-year clause of the present statute. We appreciate the hard-

ship, and are quite aware of the international trade-mark difficulties which beset the path of the American trader in foreign parts, who has not secured registration in his own country. But the remedy is with the Congress, and neither the Commissioner of Patents nor any court can change the accepted law on which the Trade-Mark Act of 1905 was built.

"It is not possible under the present act for a citizen to choose as his trade-mark something invalid by general law, use it without opposition long enough to make a showing of trade repute and commercial success, derive from that success 'secondary meaning' for his mark, and then apply for registration. There is much to be said in favor of a registration law which would give legal and governmental sanction to any mark which it could be shown the public had accepted. Such a system would enable this plaintiff to prevail; but Congress must first create it."

While the case last cited was also cited in the Plymouth Case, supra, it was not cited to the point of secondary meaning of a descriptive term.

Inasmuch as the Supreme Court of the United States has directly held that a geographical term which was descriptive of the place where the articles were manufactured was not registrable even though it had acquired a secondary meaning, we must follow our decision in the Overhead Door Case, supra, which is in harmony with the views of the Supreme Court, and in so far as the opinion in the case of In re Plymouth Motor Corporation, supra, expresses a contrary view, it must be considered as overruled.

But one other point remains to be considered. Appellant contends that its map of Canada is colored in a distinctive design in an arbitrary color scheme, and that it is therefore registrable even though, without such colors, it would not be registrable.

In response to this contention, we would observe that appellant's mark is still merely a map of Canada, with various portions of the map colored in different colors. The color does not in any wise change the design, which is a map of Canada.

It is established that a mark is not registrable if color alone is its distinguishing characteristic. Leschen & Sons Rope Co. v. American Steel & Wire Co., 55 F.(2d)

455, 19 C.C.P.A.(Patents) 851, and cases therein cited.

Like the Commissioner, we find it unnecessary to consider the ground upon which the Examiner of Trade-Marks rejected appellant's application, viz., estoppel growing out of the registration of the mark here involved under the Act of March 19, 1920.

We are clear that appellant's mark of a map of Canada is not registrable as a trade-mark, and the decision of the Commissioner of Patents is affirmed.

Affirmed.

HATFIELD, Associate Judge, concurs in the conclusion.