## KAY & ESS CO. v. COE, Commissioner of Patents. *
## No. 6804.

United States Court of Appeals for the District of Columbia.

Decided Aug. 9, 1937.

John M. Mason, of Washington, D. C., and H. A. Toulmin and H. A. Toulmin, Jr., both of Dayton, Ohio, for appellant.

*Writ of certiorari denied 58 S.Ct. 282, 82 L.Ed. ——.

R. F. Whitehead, Solicitor, United States Patent Office, for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

The appellant sought, under the Trade-Mark Act of 1905, § 5 (33 Stat. 725 [15 U.S.C.A. § 85]), to register the word "Morocco" as a trade-mark for a class of paints and varnishes. The pertinent portion of the Act is a proviso that:

" . . . no mark which consists . . . merely in words . . . which are descriptive of the goods with which they are used, or of the character or quality of such goods, . . . shall be registered . . . "

The appellant made application in the usual course in the United States Patent Office. The application was refused by the Examiner, upon the ground that the word "Morocco" is merely a descriptive designation of the goods. This refusal was, upon the same ground, confirmed by the Assistant Commissioner of Patents. The appellant then filed a bill in equity in the District Court of the United States for the District of Columbia under Rev. Stat. § 4915 (as amended, 35 U.S.C.A. § 63), praying that it be adjudged entitled to receive a certificate of registration. After a trial upon the merits on issues of fact raised by an answer filed by the appellee Commissioner of Patents, the trial court ruled that the word "Morocco" is not registerable and dismissed the appellant's bill. The trial court made findings of fact as follows:

"1. The application of the Plaintiff involved in this proceeding is for the registration under the Trade-Mark Act of 1905 of the term 'Morocco' as a trade-mark for a lacquer finish.

"2. Plaintiff's finish when applied to an article gives an appearance indicating a simulation of Morocco leather.

"3. The word Morocco had been extensively used by Plaintiff in connection with its product."

The trial court made the following conclusions of law:

"1. The term Morocco as used by Plaintiff is descriptive of the goods upon which it is used.

"2. A word which is aptly descriptive of the goods with which it is used is not registerable as a trade-mark under the Trade-Mark Act of 1905, even if it has acquired a 'secondary' meaning as indicating the goods of the user.

"3. The term Morocco as used by Plaintiff did not function as a trade-mark to indicate origin or source of manufacture but was employed to designate the type of finish produced by Plaintiff's product.

"4. The word Morocco is not registerable by Plaintiff. .

"5. The Bill should be dismissed."

It appeared from the evidence that the appellant applied the word "Morocco" to a class of paints, variously referred to as enamels, varnishes, lacquers and japans, which were used for a final coat upon either wood or metallic surfaces. According to an affidavit of the president of the appellant · company, which was introduced in evidence, "the word 'Morocco' is used to designate our paints and varnishes where there is a special finish that looks like imitation Morocco leather." The president also testified, according to the narrative statement of evidence:

" 'Morocco' is applied to a line of finishes that we call imitation leather finishes, more to distinguish them from high gloss or flat enamels of the conventional type. The surface of these enamels is not smooth, as for the conventional enamels; they vary from a fairly high gloss to absolutely flat, but the surface is composed of wrinkles of various types, and those wrinkles are not in one direction, but in all directions.

"In the various enamels of this character which we designate as 'Morocco,' these wrinkles vary a great deal as to size and degree of coarseness and fineness. As to the commercial reason for the variation in these different types of finishes which we designate 'Morocco' and for having wrinkles in these finishes, some customers want one type of finish and some want another. I mean by that some want a glossy finish, with shiny spots in there that some of them call 'eyes'; others want more or less flat finishes. These variations in finishes are all specified by the same general trademark 'Morocco.' "

It appeared also from the evidence that the term "Morocco" as used in the trade identifies the product made by the appellant.

The appellant urges as errors the trial court's rulings that the word "Morocco" is descriptive of the goods, and that a word which has acquired a secondary meaning is not registerable even though it be descriptive.

1. The trial court correctly decided that the term "Morocco" was descriptive of the appellant's goods. The quoted statement from the affidavit of the appellant's president supports the trial court's finding of fact to such effect. There are numerous similar decisions by the courts. Especially persuasive are the following: Barton v. Rex-Oil Co. (C.C.A.1924) 2 F.(2d) 402, 40 A.L.R. 424; Mirrolike Mfg. Co. v. Devoe & Raynolds Co. (D.C.1923) 3 F.(2d) 846; Hercules Powder Co. v. Newton (C.C.A. 1920) 266 F. 169; Sears, Roebuck & Co. v. Elliott Varnish Co. (C.C.A.1916) 232 F. 588. These cases, respectively, hold descriptive: "Dyanshine" as applied to shoe polish; "Mirrolike" as applied to furniture, floor and automobile polish; "Infallible" as applied to explosive powders; "Roof Leak" as applied to roof paint. In this jurisdiction Continental Varnish Co. v. Alabastine Co. (1925) 56 App.D.C. 19, 6 F. (2d) 717; In re Swan & Finch Co. (1919) 49 App.D.C. 95, 259 F. 991; and In re Anti-Cori-Zine Chemical Co. (1909) 34 App.D. C. 191, are, we think, controlling. They, respectively, hold descriptive: "Opaline" as applied to varnishes; "Slo Flo" as applied to lubricating grease; "Getwell" as applied to medicines.

Calling attention to the terms of the statute forbidding registration of words "descriptive of the goods with which they are used, or of the character or quality of such goods," the appellant especially urges that the word "Morocco" is not descriptive of its goods for the reason that the same are in liquid form in cans, and in that form have no leather-like appearance. This is too narrow and technical a use of the term "goods." The appellant's finishes are as much its goods, in the trade-mark sense of the term, when applied to a wood or metallic surface as when in the can. On the facts of the cases above cited the word "Dyanshine" does not describe shoe polish in the box, but its effect upon shoes when applied to them; the term "Mirrolike" does not describe furniture, floor and automobile polish in the container, but its effect when applied to the surfaces referred to; the term "Infallible" does not describe explosive powder in the container, but

its dependable firing quality in use; the words "Roof Leak" and "Opaline" do not describe paint in the can—"Roof Leak" describes a capacity of paint, after application, to keep roofs from leaking; "Opaline" describes the appearance of varnish when applied; "Slo Flo" does not describe the appearance of lubricating grease itself in the original container, but its quality of viscosity in use; and "Getwell" describes the effect of medicine upon the patient, not the character or quality of the medicine in box or bottle.

In Re Irving Drew Co. (1924) 54 App. D.C. 310, 297 F. 889, this court held the term "Arch Rest" as applied to boots, shoes and slippers, not descriptive. The appellant insists that the case is controlling in its favor. As written, the decision is rested upon the proposition that the term "Arch Rest" is descriptive, not of the character or quality of the goods themselves, but of their effect upon the wearer. So restricted, the decision is distinguishable from the instant case because the term "Morocco" is descriptive of the appellant's finishes themselves, in their applied-to-surface form, rather than of their effect, in the sense of In re Irving Drew Co., upon surfaces. The instant case being distinguishable from In re Irving Drew Co., we are not called upon either to follow the case or to modify or overrule it. But we think it fair to state that upon present consideration of the case, it seems to put too narrow a construction upon the Trade-Mark Act (15 U.S.C.A. § 81 et seq.).

2. In respect of the appellant's point that a descriptive word is registerable if it has acquired a secondary meaning: The law is settled that while a secondary meaning may be protected in equity against fraudulent or deceptive use, the existence of a secondary meaning is not a foundation for registration of a descriptive word. See Elgin Nat. Watch Co. v. Illinois Watch Co. (1901) 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365, and see In re Canada Dry Ginger Ale (Cust. & Pat.App.1936) 86 F.(2d) 830, overruling, in respect of the point in question, In re Plymouth Motor Corporation (Cust. & Pat.App.1931) 46 F.(2d) 211, which is relied upon by the appellant. Lowe Bros. Co. v. Toledo Varnish Co. (C.C.A.1909) 168 F. 627, also relied upon by the appellant, does not hold, as we read it, that the acquisition of a secondary meaning is a foundation for registration of a descriptive word, but merely that a sec-

ondary meaning may be protected in equity against deceptive use.

The decree of the trial court is

Affirmed.

Judge VAN ORSDEL took no part in the decision of this case.